## TRAYWICK v. SOUTHERN RAILWAY.

Damages—Loss and Profit—Common Carrier.—In action for damages for failure of common carrier to deliver a rice huller, in absence of notice to the carrier of the use for which the machine was immediately intended, plaintiff cannot recover damages for loss in milling rice carried by the public to other mills, because of the delay in delivery, and the fact that the machine was shipped to a dealer in machinery at a station other than his place of business, does not tend to show notice to the carrier of the use for which machine was intended.

Before Klugh, J., Orangeburg, June, 1904. Reversed.

Action by J. B. Traywick against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney* and *Jos. W. Barnwell,* for appellant, cite: *As to measure of damages:* 9 Ex., 341; Sed. on Dam., secs. 144, 146, 149; Wood's Mayne on Dam., 12, 17; 3 Suth. on Dam., sec. 903; 5 Ency., 2 ed., 392; 25 S. C., 68; 2 Speer, 536; Dud., 180; 66 S. C., 61; 70 S. C., 16; 46 Miss., 476; 62 Wis., 827; 169 Mass., 326; 130 N. C., 613; 53 N. C., 235; 26 Ill., 205; 58 S. W., 54; 23 S. W., 320.

*Mr. Jas. F. Izlar,* contra, cites: *The rule now is that recovery of profits is allowed when they would have been earned with reasonable certainty:* Sher. & Rev. on Neg., 650, 651; 45 S. C., 31; 7 Rich., 190; 70 S. C., 16. *Defendant is liable for remote damages occasioned by delay:* Field on Dam., 323, 328, 332, 334; 5 Ency., 2 ed., 398, 244; 78 Am. Dec., 277; 7 Rich., 190; 52 L. R. A., 33; 53 L. R. A., 33. *As to nature of bill of lading:* 4 Ency., 570, *et seq.;* 19 S. C., 367; 25 S. C., 216.

### STATEMENT OF FACTS.

The question presented by the exceptions require reference to the complaint, which is as follows:

The first paragraph of the complaint alleges the corporate existence of the defendant.

"II. That on or about the 16th day of October, 1899, the plaintiff ordered through W. H. Gibbes & Co., of Columbia, S. C., one rice huller, to be shipped to him at Cope, S. C., as early as practicable; that shortly thereafter plaintiff received through the said W. H. Gibbes & Co., the bill of lading for said rice huller, duly indorsed to him, showing that on the said 16th day of October, 1899, the Barnard & Leas Manufacturing Co., of Moline, in the State of Illinois, had delivered to the Chicago, Burlington and Quincy Railroad Co. one rice huller, knocked down and crated, two pieces, weight 1,100 pounds, consigned to W. H. Gibbes & Co., Cope, S. C.; and that the said rice huller had been shipped as second class freight, at the rate of one dollar and forty-two cents per hundred.

"III. That the said bill of lading provided among other things as follows: 'If destination is not on the line of the Chicago, Burlington and Quincy Railroad Co., delivery to be made at any convenient station on the line of the Chicago, Burlington and Quincy Railroad Co. to a connecting carrier; whereupon all further liability of the Chicago, Burlington and Quincy Railroad Co. shall cease;' that the said Chicago, Burlington and Quincy Railroad Co., in pursuance of its said agreement, and for the consideration therein named, did within a reasonable time after the receipt of the said rice huller, as aforesaid, transport and deliver the said rice huller to the connecting carrier at the most convenient station on its line, the point of destination, Cope, S. C., not being a station on its said line; and that thereafter, and within a reasonable time, the said rice huller, the property of the plaintiff, of the value of $275, was delivered to and received by the defendant herein, to be transported and delivered by the defendant at some convenient station on its line to the connecting carrier, to be transported to the point of destination, Cope, S. C., a station not on defendant's line.

"IV. That notwithstanding the said rice huller was, as plaintiff is informed and believes, delivered to and received

by the defendant in good order from its connecting carrier, and within reasonable time, after its shipment from Moline, in the State of Illinois, the defendant failed to care for or safely to carry said rice huller; but so negligently and carelessly carried the same, that the said rice huller became broken, thereby unfit for use, until the broken parts could be supplied from the manufactory at Moline, aforesaid; and that after the said rice huller had been carried by the defendant to the city of Columbia, in the State of South Carolina, a station on the defendant's line, it was unloaded and placed in its depot at said point, and was there, through the negligence and carelessness of the defendant and its servants, permitted to remain the space of thirty days, and was not carried forward until the same was traced up by the said W. H. Gibbes & Co., and ordered to be carried forward by the defendant, as it had undertaken and agreed to do.

"V. That the said rice huller did not, by reason of the negligence and carelessness of the defendant, arrive at Cope, S. C., the point of its destination, until the 11th day of November, 1899, more than thirty days after it was delivered to and received by the defendant company, to be carried forward by the defendant company with care and safety, and without delay, to the point of its destination; and more than sixty days after it was shipped from Moline, in the State of Illinois.

"VI. That the plaintiff was at the times above mentioned, and is now, engaged in the rice milling business, and the delay caused by the defendant in forwarding said rice huller, and in having the injuries thereto repaired, deprived him of its use during nearly all the rice milling season, and caused a number of persons who had engaged the plaintiff to hull their rice to take it elsewhere, whereby he lost all the profits which would have otherwise accrued to him from his said business, which would have amounted to a large and considerable sum."

The seventh paragraph alleges the damages at $1,000.

The defendant made a motion at a previous term of the Court to strike out the words, "and caused a number of persons who had engaged the plaintiff to hull their rice to take it elsewhere," in paragraph 6 of the complaint, which was refused.

The jury rendered a verdict in favor of the plaintiff for $150.

The defendant appealed upon numerous exceptions.

OPINION.

March 11, 1905.   The opinion of the Court was delivered by

MR. JUSTICE GARY (after stating the foregoing facts). The first question for consideration is, whether his Honor, the presiding Judge, erred in allowing the plaintiff to introduce testimony, showing loss of profits, by reason of the fact that the public carried their rice elsewhere to be hulled, on account of the delay mentioned in the complaint.

The general principles relating to the recovery of damages, may be said to have been definitely settled since the leading case of *Hadley* v. *Baxendale,* 9 Exch., 341. The difficulty arises when it becomes necessary to apply the general principles to the facts of the particular case. The principles indicated in the case of *Hadley* v. *Baxendale* are thus succinctly stated in section 14 of Wood's Mayne on Damages: "First. That damages which may fairly and reasonably be considered as naturally arising from a breach of contract, according to the usual course of things, are always recoverable. Second. That damages which would not arise in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case, are not recoverable, unless the special circumstances are known to the person who has broken the contract." This language is quoted with approval in *Sitton* v. *McDonald,* 25 S. C., 68.

The case of *Mood* v. *Tel. Co.,* 40 S. C., 524, 19 S. E., 67, shows that special damages are not recoverable unless expressly alleged, and that those damages are special that do not necessarily result from the wrongful act.    In the case of *Hays* v. *Tel. Co.,* 70 S. C., 16, it was decided that profits were recoverable, when they "may fairly be supposed to have entered into the contemplation of the parties when they made the contract—that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed."    In speaking of the notice disclosed by the telegram in that case, the Court uses this language: "In the case now under consideration, the telegram which defendant undertook to transmit indicated on its face the purpose to give information of the price of live stock by size, for the word 'hand,' as the term of measurement, is not usually applied otherwise.    Such a message also gives notice that it will be used as a basis of business action or non-action, and that loss or profit is liable to result.    Indeed, the sole purpose of such telegrams is obviously to make profit by purchase and sale, and this purpose was within the understanding of the plaintiffs and the telegraph company when it undertook to deliver the message."

We proceed to apply these principles to the facts of the case under consideration.    A rice huller may be purchased for various purposes.    For instance, it might be bought for private use, or for sale, or for making profit by hulling rice for the public.    The case of *Hays* v. *Tel. Co.,* 70 S. C., 16, decided that when the object is to make profit, the party committing the act of wrong must, in some manner, have notice of this fact.    This testimony, under the pleadings, was, therefore, inadmissible and the presiding Judge erred in allowing it to be introduced.

We will consider whether his Honor, the presiding Judge, erred in ruling that there was evidence of notice on the part of the defendant.    His ruling was based upon the fact that

the huller was shipped to W. H. Gibbes & Co., with a bill of lading at Copes, instead of Columbia, S. C., the usual place of business of said firm. His view was that the defendant was bound to consider this fact in determining the purpose for which the huller was to be used by the plaintiff, as the real party in interest, and the transferee of the bill of lading. We do think this testimony tended to show that the plaintiff purchased the huller for the purpose of making profit by hulling for the public. This ruling was likewise erroneous.

The last question is whether there was error in refusing to strike out the words, "and caused a number of persons who had engaged the plaintiff to hull their rice to take it elsewhere," in paragraph 6 of the complaint. The object in alleging that fact was to enable the plaintiff to prove special damages. The plaintiff failed to allege notice of this fact on the part of the defendant. Therefore the allegation should have been struck out, as the plaintiff could derive no benefit from it, without the further allegation of notice on the part of the defendant.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.